FILED IN CHAMBERS
U.S.D.C. Atlanta

DEC 27 2005

LUTHER D. THOMAS, Clerk
By: _____
        Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

HELEN HIGGINS, AS
ADMINISTRATRIX OF THE
ESTATE OF WAYMON RAYNELL
WEATHERS, DECEASED,

        Plaintiff,                    CIVIL ACTION

        v.                            NO. 4:05-CV-011-RLV

GEORGIA DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.

O R D E R

This is an action pursuant to 42 U.S.C. § 1983, in which the
plaintiff also asserts a number of state law causes of action
against the defendants.   Pending before the court are the
defendants' motion for partial dismissal of certain parties and
claims [Doc. No. 28] and the defendants' motions to file briefs in
excess of the standard page limits [Doc. Nos. 27 and 35].   In
response, the plaintiff filed a motion for leave to amend her
complaint [Doc. No. 31].[1]   Also pending is a motion for an
extension of time to complete discovery [Doc. No. 29].

_____

[1] The plaintiff filed this motion twice.  The clerk is directed
to terminate the plaintiff's duplicative motion [Doc. No. 32],
since it is a copy of pleading Doc. No. 31.

## I. Procedural History

The following facts are gleaned from the court's review of the record and the parties' submissions.  The plaintiff, Helen Higgins, who is the natural mother of Waymon Raynell Weathers, alleges that on or about January 14, 2003, while her son was incarcerated in Walker State Prison,[2] which is a unit of the Georgia Department of Corrections ("DOC"), Weathers complained to personnel, who were employed by DOC or contracted by DOC, that his vision was blurred, that he was disoriented, and that he was having trouble with his equilibrium.   Over the next several days, Weathers continued to complain of these problems to various State employees.   Though several of the State employees knew that Weathers was a diabetic, Weathers was placed in administrative confinement and transferred to Hays State Prison ("Hays") for medical/mental health monitoring and possible disciplinary action   instead of receiving necessary medical treatment.

At or about 5:00 p.m. on January 17, 2003, Weathers was in "obvious and extreme distress, and was exhibiting seizure-related activity patently obvious to either a lay-person or any medical provider" according to the complaint.   The medical staff at Hays did not notify an ambulance until 6:00 p.m., and an ambulance did not arrive until approximately 6:40 p.m.   On January 17, 2003,

---

[2] The plaintiff mistakenly referred to this facility as "Weathers State Prison." in her complaint.

2

Weathers was transported to Hutcheson Medical Center, where he was diagnosed with cardio-respiratory arrest; he never regained consciousness.  Weathers's family, based on his medical condition, made the decision to take him off the ventilator that was keeping him alive, and Weathers died on January 24, 2003.  On December 8, 2004, the plaintiff was appointed administratix of Weathers's estate.

On or about January 8, 2004, the plaintiff's attorney sent an ante litem notice to the Director of the Risk Management Division of the Department of Administrative Services ("DOAS"), the Commissioner of the DOC, Walker State Prison, and Hays State Prison alerting them of the plaintiff's potential suit.  However, the plaintiff admits that she failed to personally deliver or mail by first-class mail an ante litem notice to either the Board of Regents ("BOR") and/or the Medical College of Georgia ("MCG"), who the plaintiff alleges were responsible for administering the medical care at the Walker and Hays facilities.

In a five count complaint filed on January 13, 2005, the plaintiff asserted the following claims: (1) a claim for medical malpractice; (2) a claim against the DOC pursuant to common law and O.C.G.A. § 42-5-2; (3) a claim for breach of contract claim against BOR; (4) a claim sounding in tort brought pursuant to O.C.G.A. § 51-1-7; and (5) several claims brought pursuant to 42 U.S.C. § 1983 for deliberate indifference to Weathers's right to life and liberty

3

in violation of the due process clause of the United States Constitution and for alleged cruel and unusual punishment in violation of the Eighth Amendment against the individually named State Employees[3] and State entities.

The plaintiff does not dispute that she failed to mail a copy of the complaint to the Attorney General of Georgia contemporaneously with the filing of her complaint in this court. In addition, the plaintiff admits that the complaint originally served upon the various defendants lacked the necessary certificate stating the requirement of mailing a copy of the complaint to the Attorney General had been satisfied as is required by O.C.G.A. § 50-21-35.[4]

On August 5, 2005, the defendants filed the pending motion for partial dismissal requesting that the court dismiss all of the plaintiff's claims against the defendants except for the federal

---

[3] The individually named "State Employees" collectively represent all of the individually named defendants in the caption of the complaint, i.e., James L. Lanier, Dale Herndon, Paul Ballinger, Sue Saladanja, Kathy Smith, Dr. Bobby Crocker, Dr. Terrell Tanner, Dr. Terence Dunn, Joan Newell, Sandra Gilbert, Lt. Gates, and Correction Officer McCallister.

[4] In a letter from the plaintiff's counsel to Ralph W. Ellis, the Assistant Attorney General, the plaintiff's counsel stated, "Your answer correctly points out that my office has failed to send a copy of the complaint to the attorney general's office pursuant to O.C.G.A. § 50-21-35. Please be advised that on today's date I am sending you via separate cover a copy of the complaint, via certified mail, return receipt requested, as well as a certificate of service indicating that the requirement of O.C.G.A. § 50-21-35 has been satisfied."

4

claims brought pursuant to 42 U.S.C. § 1983 filed against the State Employees sued in their individual capacity.  On August 24, 2005, the plaintiff filed a motion for leave to amend her complaint, in an attempt to cure her previous failure to comply with the requirements of O.C.G.A. § 50-21-35.

## II. Legal Analysis
## 1. Motion for Leave to Amend Complaint

As a primary matter, the court must determine whether the plaintiff's motion for leave to file an amended complaint should be granted.  Federal Rule of Civil Procedure Rule 15(a), which governs the amendments to pleadings, provides that after any responsive pleading has been filed, any subsequent amendments are permitted only with the leave of the District Court.  Although leave to amend is ordinarily freely granted, the decision to allow an amendment lies with the court's sound discretion and will not be disturbed absent an abuse of discretion.  Foman v. Davis, 371 U.S. 178, 182 (1962).  As a general proposition, the court would grant leave to amend a plaintiff's complaint.  However in this instance, the defendant argues that the plaintiff's failure to serve the Attorney General with a copy of the complaint either prior to or at the same time as filing her complaint in this court and the plaintiff's failure to attach the required certificate to the complaint are not amendable defects.  The court agrees.

In reaching this decision, the court consulted Georgia Tort

5

Claims Act ("GTCA"), O.C.G.A. § 50-21-35, and relevant Georgia case law.

In passing the GTCA,

> [t]he General Assembly granted a limited waiver of sovereign immunity with certain conditions precedent to the waiver; "[t]he state waives its sovereign immunity only to the extent and in the manner provided in this article. . . Substantial compliance with the Act is inadequate to waive sovereign immunity . . ." If a condition precedent to waiver of sovereign immunity has not been satisfied, then the trial court lacks subject matter jurisdiction and no valid action is pending to toll the running of the statute of limitation.

Sylvester v. Dept. of Transp., 252 Ga. App. 31, 32 (2001).

> Specifically, O.C.G.A. § 50-21-35 states:

> In all civil actions brought against the state under this article, to perfect service of process the plaintiff must both: (1) cause process to be served upon the chief executive officer of the state government entity involved at his or her usual office address; and (2) cause process to be served upon the director of the Risk Management Division of the Department of Administrative Services at his or her usual office address.  The time of the state to file an answer shall not begin to run until process has been served upon all required persons.  A copy of the complaint, showing the date of filing, shall also be mailed to the Attorney General at  his or her usual office address, by certified mail or statutory overnight delivery, return receipt requested and there shall be attached to the complaint a certificate that this requirement has been met.

Georgia courts have held that among the conditions precedent to bringing an action under the GTCA are those set forth in O.C.G.A. § 50-21-35. Sylvester, 252 Ga. App. at 32.

As reflected by the complaint and summons attached to it, filed on January 13, 2005, and amended on February 14, 2005, no

6

copy of the complaint was mailed to the Attorney General immediately following or prior to the plaintiff's filings, nor was a certificate indicating that this requirement had been met filed along with the original complaint or amended complaint. The state raised lack of service on the Attorney General as a defense in its answer and its motion for partial dismissal. However, it was not until March 31, 2005, that a copy of the complaint was finally sent to the Attorney General. On August 24, 2005, the plaintiff filed a motion for leave to file an amended complaint to include the certificate of compliance required by O.C.G.A. § 50-21-35.

Without citation to any authority to support her position, either federal or Georgia state case law, the plaintiff argues that since the Attorney General was sent a copy of the complaint in March 2005 and the certificate was added subsequently by amendment of her complaint via a motion to amend her complaint filed in August 2005, she complied with the requirements of O.C.G.A. § 50-21-35. Furthermore, the plaintiff argues that Federal Rule of Civil Procedure Rule 4(m) and its 120-day period for service should govern this matter. The plaintiff argues that since she delivered a copy of the complaint within 120-days of filing this suit, such service should be sufficient on the Attorney General under O.C.G.A. § 50-21-35. On the other hand, the defendants argue that the GTCA requires that a copy of the complaint "shall" be mailed to the Attorney General either prior to or contemporaneously with the

7

filing of the complaint and that a certificate of such service must accompany the complaint.   The defendants argue that these requirements are strict conditions precedent to suit contained in the GTCA and must be satisfied before a court can obtain either personal and subject matter jurisdiction over state law tort claims against the State.

Rule 4(m) is inapplicable in this case.   In the current matter, the court is not dealing with insufficiency of service of process as an affirmative defense under federal procedural law under the Federal Rules of Civil Procedure, but rather with insufficiency of service of process as a condition precedent to the State's waiver of its sovereign immunity under Georgia's substantive state law.   Under GTCA, the State does not waive sovereign immunity except as provided in the statute, and the Georgia courts have consistently found that strict compliance with the statutory conditions precedent to such waiver are necessary. See, e.g., Dept. of Human Resources v. Nation, 265 Ga. App. 434, 438-439 (2004).   Moreover, the Georgia courts have consistently held that substantial compliance with the requirements of the GTCA is inadequate under the statute. Id.  This court concludes that the GTCA and its requirements "by its own terms, must be strictly construed." See Howard v. State of Ga., 226 Ga. App. 543 (1997). See also Camp v. Coweta County, 271 Ga. App. 349, 353 (2005)(noting that an inmate's failure to comply with the GTCA by sending the

Attorney General a copy of the complaint and the certificate warranted dismissal of action against the DOC); Sylvester, 252 Ga. App. at 32 (2001)(noting that if service, which is a condition precedent to the waiver of sovereign immunity has not been satisfied, then the trial court lacks subject matter jurisdiction and no valid GTCA suit is pending to toll the applicable statute of limitations); Curry v. Georgia Dept. of Corrections, 232 Ga. App. 703, 703-4 (1998)(noting that the procedural strictures of the GTCA, like its other terms, are strictly construed.)

In reaching its decision not to allow the plaintiff to amend her complaint, the court found the reasoning of the court in Camp especially persuasive. In Camp, the Court of Appeals of Georgia noted that O.C.G.A § 50-21-35 includes the word "shall" regarding service on the Attorney General, indicating that the service on the Attorney General is a condition precedent to the State's waiver of immunity from suit. Camp, 271 Ga. App. at 353. Moreover, O.C.G.A. § 50-21-35 includes an express provision that the complaint "shall" include a copy of the certification that the service has been made on the Attorney General. The court viewed the language of O.C.G.A. § 50-21-35 to mean that the certificate was a necessary and required element of a proper complaint. The court also interpreted O.C.G.A. § 50-21-35 to mean that the complaint must be sent to the Attorney General either prior to the filing of the complaint or contemporaneously with the filing of the complaint, since O.C.G.A.

9

§ 50-21-35 also requires that a certificate of such service "shall" be attached to the complaint.  The court concludes that the only plausible interpretation of this requirement would be for the service on the Attorney General to be made either prior to or at the same time of the filing of the complaint.  The plaintiff admittedly failed to satisfy these strict statutory requirements. Moreover, the plaintiff has also failed to provide this court with any precedent to support the proposition that this court can grant her leave to amend her complaint to cure either defect.[5]

Therefore, this court concludes that the plaintiff's failure to comply with the strict statutory requirements O.C.G.A. § 50-21-35 cannot be cured by her service on the Attorney General in March 2005 or by her current amendment to include a certification that such service was made, since these requirements are conditions precedents to the State's waiver of sovereign immunity. Consequently, the plaintiff's motion for leave is not allowed and

_____

[5] In arriving at this conclusion, the court notes that O.C.G.A. § 50-21-35 does not contain a provision allowing a plaintiff to cure either defective service on the Attorney General or for amending a complaint which lacks the necessary certification regarding service on the Attorney General.  The analysis of Camp is helpful.  There the court noted that GTCA does provide in O.C.G.A. § 50-21-26(a)(4) that failure to attach to the complaint copies of the ante litem notice and proof of delivery of ante litem notices may be cured by amendment within 30 days of the state's raising of the issue by motion.  However, O.C.G.A. § 50-21-35 lacks such a provision that would allow a plaintiff to cure a previously defective service on the Attorney General.  The court found the absence of such a cure provision in O.C.G.A. § 50-21-35 to be highly significant.

therefore the plaintiff's motion to amend her complaint is DENIED. Furthermore, the court dismisses the plaintiff's state law claims against the State and its entities named in the complaint, i.e., DOC, BOR, and MCG, for the plaintiff's failure to comply with the strict statutory requirements of O.C.G.A. § 50-21-35.

## 2. Motion to Dismiss

The defendants moved for partial dismissal on five grounds: (1) that the State of Georgia has not waived its sovereign immunity from suit in tort with respect to actions brought in the courts of the United States and, therefore, this suit against DOC, MCG, and the state employees are barred by the Eleventh Amendment of the United States Constitution; (2) that DOC, MCG, and the State Employees sued in their official capacity are not "persons" subject to suit under 42 U.S.C. § 1983; (3) that the plaintiff's complaint, to the extent that it asserts a tort claim against state employees, should be dismissed because all the actions allegedly taken by these defendants were taken while the employees were acting "within the scope of their official duties" of employment with the State of Georgia and are not subject to suit or liability for a tort claim pursuant to O.C.G.A. § 50-21-25(a); (4) that the plaintiff failed to give an ante litem notice to either BOR or MCG as required by O.C.G.A. § 50-21-26(a)(2); and (5) that the plaintiff failed to mail a copy of the complaint to the Attorney General

11

contemporaneously with the filing of the complaint and she failed to attach to the complaint a certificate that the requirement of mailing to the Attorney General had been met as required by O.C.G.A. § 50-21-35.

In her response to the defendants' motion for partial dismissal, the plaintiff concedes that the State of Georgia has not waived sovereign immunity regarding the plaintiff's § 1983 claims, that the Eleventh Amendment immunity attaches to DOC, MGC, and the State Employees in their official capacities, and that DOC, MGC and the State Employees in their official capacity are not "persons" subject to suit under 42 U.S.C. § 1983.  The plaintiff disputes defendants' remaining arguments. As discussed above, the plaintiff cannot cure her previously defective service on the Attorney General and defective complaint by amending her complaint at the present time.  Therefore, the court must address only the two remaining questions, i.e., whether the failure to send an ante litem notice to MCG and/or BOR bars suit against said entities and whether the State Employees who were individually named in the complaint are immune from the state tort claims brought against them pursuant to O.C.G.A. § 50-21-25.

## A. Notices of Claim to BOR and/or
## MCG Pursuant to O.C.G.A. § 50-21-26

O.C.G.A. § 50-21-26(a)(2) states:

Notice of claim shall be given in writing and shall be
mailed   by   certified   mail   or   statutory   overnight
delivery,   return   receipt   requested,   or   delivered
personally to and a receipt obtained from the Risk
Management Division of the Department of Administrative
Services.   In addition, a copy shall be delivered
personally to or mailed by first-class mail to the state
government entity, the act or omissions of which are
asserted as the basis of the claim.   Each state
government entity may designate an office or officer
within that state government entity to whom a notice of
claims is to be delivered or mailed.

In this case, the plaintiff admits that the ante litem notice

sent to DOAS did not mention either BOR or MCG as potential

entities responsible for Weathers's injuries and eventual death.

Furthermore, the plaintiff admits that neither entity was served

with an ante litem notice.

The defendants argue the plaintiff's failure to send an ante

litem notice to DOAS setting forth a claim against BOR or MCG is a

violation of O.C.G.A. § 50-21-26(a)(2) that warrants dismissal of

any claims against those entities.[6]   In response, the plaintiff

does not dispute that she failed to serve an ante litem notice to

either BOR or MCG.   Instead, the plaintiff argues that there "is no

---

[6] In the pending motion to dismiss, the defendants also argue
that the ante litem notice was deficient in that the notice did not
sufficiently describe "the nature of the loss suffered" by the
plaintiff.   However, the court finds it unnecessary to consider
this argument.

13

language in 50-21-26 which requires the [p]laintiff to send an ante litem notice to <u>each and every</u> possible subdivision of the State of Georgia which could have liability to the [p]laintiff." Alternatively, she argues that her notice sent to the DOAS should have alerted the State to any potential claims she might have had against BOR and/or MCG.[7]

The plaintiff's arguments are without merit.  In clear and unambiguous language, O.C.G.A. § 50-21-26(a)(2) requires a person having a tort claim against the State to send a notice of claim to the Risk Management Division of DOAS *and* a copy to "the state government entity, the act or omissions of which are asserted as the basis of the claim."  As stated above, the Georgia courts have strictly construed the requirements of the GTCA. <u>See Grant v. Faircloth</u>, 252 Ga. App. 795 (2001)(noting that substantial compliance with the ante litem notice requirements is inadequate under GTCA.) <u>See Camp</u>, 271 Ga. App. at 355 (noting that an inmate's failure to name the DOC as the state governmental entity sought to be held responsible when he sent out his ante litem notice of

---

[7] In their reply brief, the defendants refute this argument by citing to <u>Johnson v. E.A. Mann & Company</u>, 273 Ga. App. 716, 722 (2005):

> [I]t is not the role of the Risk Management Division to analyze the allegations of a plaintiff's notice and come to a conclusion as to which state government entity, or entities, a plaintiff intends to sue; instead, it is the responsibility of the plaintiff to simply name the entity or entities in its notice of claim.

claims and his failure to send a notice to the DOC were violations of the requirements of GTCA which warranted dismissal of the plaintiff's suit.) See also Premo v. Georgia Ports Authority, 227 Ga. App. 27 (1997)(noting that a failure to comply with the notice requirements of O.C.G.A. § 50-21-26 was fatal to an action against the Georgia Ports Authority.)

In this case, the plaintiff does not dispute that she did not notify DOAS that BOR and MCG were potential entities responsible for Weathers's damages. Nor does the plaintiff dispute that she did not send either BOR or MCG ante litem notices as required by O.C.G.A. § 50-21-26(a)(2). Because of the plaintiff's own admissions and Georgia case law, the court dismisses any state law tort claims against BOR and/or MCG for the plaintiff's failure to comply with the ante litem requirements of O.C.G.A. § 50-21-26(a)(2).

### B. Immunity Provided by O.C.G.A 50-21-25

O.C.G.A. § 50-21-25 states:

(a) This article constitutes the exclusive remedy for any tort by a state officer or employee. A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor. However, nothing in this article shall be construed to give a state officer or employee immunity from suit and liability if it is proved that the officer's or employee's conduct was not within the scope of his or her official duties or employment.

(b) A person bringing an action against the state under the provisions of this article must name as a party

15

defendant only the state government entity for which the state officer or employee was acting and shall not name the state officer or employee individually.  In the event that the state officer or employee is individually named for an act or omission for which the state is liable under this article, the state government entity for which the state officer or employee was acting must be substituted as the party defendant.

The defendants argue that at all times relevant to this suit, the individually named State Employees were employees of either MCG or DOC, both of which are state government entities.  Furthermore, the defendants argue that when treating Weathers and when providing security to Weathers, the individually named State Employees were acting within the scope of their official duties and employment. Thus, the defendants argue that the individually named State Employees are entitled to immunity from all state law tort claims pursuant to O.C.G.A. § 50-21-25(a).

In response, the plaintiff argues that to the extent that the defendants are correct in their interpretation of O.C.G.A. § 50-21-25, then DOC should be substituted in place of defendants James Lanier, Lester Dale Herndon, Christopher A. McCallister, and Jeanette Gates and MCG should be substituted in place of defendants Paul Ballinger, Sue Saladanja, Kathy Smith, Dr. Bobby Crocker, Dr. Terrell Tanner, Dr. Terence Dunn, Nurse April Brown, Nurse Joan Newell, and Nurse Sandra Gilbert.  This court agrees.

In their reply brief, the defendants argue that such a substitution is unnecessary because MCG and DOC are already parties to the case.  Moreover, the defendants argue that, even if such

16

entities were not already parties and such a substitution was made, the substitution would result in the dismissal of the State entities because the plaintiff failed to satisfy the aforementioned conditions precedent to obtaining the waiver of the State's sovereign immunity.

Strictly construing O.C.G.A. § 50-21-25(b), the court concludes that it is compelled to substitute the individually named State Employees named in the complaint with the State entities, i.e., DOC and MCG.  The result of such a substitution is that all the state law tort claims against DOC and MCG would be dismissed because of the plaintiff's failure to satisfy the conditions precedent needed to obtain the State's waiver of its sovereign immunity as described above.  Considering these facts, the court finds it unnecessary to reach the issue of whether the individually named State Employees, including those who are medical professionals, are immune from suit pursuant O.C.G.A. § 50-21-25(a).  Consequently, the court dismisses all the state tort law claims found in Counts I, II, and IV of the plaintiff's complaint to the extent that said claims assert state law tort claims against the individually named State Employees.[8]

_____

[8] Count III of the plaintiff's complaint contains a breach of contract claim.  The plaintiff alleges that "Defendants DOC and the Board of Regents had prior to the incident complained of contracted to provide appropriate health care services for GDC prisoners in concert with GDC Office of Health Services and under the general supervision of the GDC Director of Health Service."  Count III continues, "Defendant Board of Regents breached said contract by

17

Even if the court were to analyze the immunity of the individually named State Employee under O.C.G.A. § 50-21-25(a), the court would reach the same result.  In her response in opposition to the defendants' motion to dismiss, the plaintiff argues that certain defendants were not acting within the "course of their official duties" and such defendants may be subject to suit individually under Georgia state law.  Specially, the plaintiff argues that the individually named State Employees who are medical professionals do not have immunity from malpractice claims: "because of the relationship between physicians and patients, jail physicians cannot use the sovereign immunity law as a shield to insulate themselves from individual liability for medical malpractice claims." Howard v. City of Columbus, 239 Ga. App. 399, 415-16 (1999).  On this point, the court finds the plaintiff's arguments to be without merit.[9]

---

failing to provide appropriate health care services to inmate Weathers."  Count III concludes stating, "Waymon Weathers was a third party beneficiary to the contract between DOC and Board of Regents/MCG."  The court dismisses the breach of contract contained in Count III because BOR, MCG, and DOC have already been dismissed from this suit for the plaintiff's failure to satisfy the conditions precedent to obtain waiver of the State's sovereign immunity.  Moreover, the court has serious doubts that the plaintiff has a viable cause of action as a third party beneficiary.

[9] Howard does not control here because Howard involved a physician who was employed by a county, not by the State.  GTCA's immunity protection is inapplicable to county employees. See Minor v. Barwick, 264 Ga. App. 327, 336-337 (2003).

The court also notes that the facts of Keenan v. Ploufee, 267

18

Furthermore, the plaintiff's current arguments, contained within her response in opposition to the defendants' motion for dismissal, directly contradict her own allegations in her complaint. In her complaint, nowhere did the plaintiff allege that any of the individually named State Employees' medical treatment of Weathers was conducted "outside of the scope of their employment" as State Employees.[10]   In fact, the plaintiff alleges in ¶¶ 37-38

Ga. 791, 795 (1997) upon which Howard relied upon are distinguishable from the facts of this case. Keenan involved a faculty member at the Medical College of Georgia, who operated on a private-pay patient at the medical college hospital. The surgery resulted in brain damage to the patient, for which the patient's husband sued the physician. The Georgia Supreme Court ruled that the physician was not acting in the course of his official duties as a state employee in treating the patient because the duties he was alleged to have violated were independent of his duties as a professor at the Medical College. Keenan, 267 Ga. at 793.

In fact, the Georgia Supreme Court acknowledged that its decision in Keenan was limited exclusively to private-pay situations. On this point, the court stated:

> Because this case involves the exercise of a medical discretion on a private-pay patient that was not controlled by the government employer or by statute, we do not consider whether immunity is appropriate for state-employed physicians who are required to treat particular patients, or who are alleged to have violated governmental, as opposed to medical, responsibilities, or whose medical discretion is controlled or impacted by governmental standards or constraints.

Keenan, 267 Ga. at 796, n. 17.

In this case, all of the individually named State Employees were acting under a statutory duty to provide health care to inmates. The plaintiff admits this fact in her complaint.

[10] The plaintiff did not dispute that the individually named State Employees who were employed by DOC are entitled to immunity

of the complaint:

> All Defendants were at all times "persons" acting "under
> color of law" and were involved with supervising, caring
> for, and maintaining custody of Mr. Weathers with a
> statutory responsibility under Georgia law to provide
> proper and adequate medical care to Mr. Weathers and
> those situated similarly to him.

> All Defendants were exercising a state function under
> color of law in their supervision, care, treatment and
> exercise of custody and control of Mr. Weathers.

Furthermore in Count III of the complaint, the plaintiff alleges

that the individually named State Employees' duty to treat Weathers

had a statutory basis in O.C.G.A. § 42-5-2. Therefore, the court

concludes that even if it had applied O.C.G.A. § 50-21-25(a), such

an application would have resulted in all of the individually named

State Employees named in the complaint, both those employed by DOC

and MCG, not being subject to liability for the plaintiff's state

law tort claims.

### III. Conclusion

For the reasons stated above, the plaintiff's motion for leave

to amend her complaint [Doc. No. 31] is DENIED; the defendants'

motions for leave to file briefs in excess to the typical page

limits [Doc. Nos. 27 and 35] are GRANTED; the defendants' motion

---

from the plaintiff's state law tort claims pursuant to O.C.G.A. §
50-21-25(a). Therefore, the court concluded that the plaintiff has
conceded this point.

for partial dismissal [Doc. No. 28] is GRANTED in its entirety. Except for the 42 U.S.C. § 1983 claims against the individually named State Employees in their individual capacity, all of the plaintiff's claims against the individually named State Employees and the State entities are hereby DISMISSED; and, the motion for an extension of time to complete discovery [Doc. No. 29] is DISMISSED as moot.[11]


SO ORDERED, this **27**th day of December, 2005.



ROBERT L. VINING, JR.
Senior United States District Judge

---

[11] The court had previously entered an order [Doc. No. 39] staying discovery pending the resolution of the defendants' motion for partial dismissal.